IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | |
| ) | CASE NO. BK07-40203-TJM |
| BRENT ALLEN WILSON and ) | A10-4035-TJM |
| CHERYL LYNN WILSON, ) | |
| ) | |
| Debtor(s). ) | |
| ORRIN WILSON, ) | |
| ) | |
| Plaintiff, ) | CHAPTER 7 |
| ) | |
| vs. ) | |
| ) | |
| BRADLEY D. MELLOTT; NANCY S. ) | |
| MELLOTT; BRENT ALLEN WILSON; ) | |
| CHERYL LYNN WILSON; RYAN A. ) | |
| WILSON; NATHAN O. WILSON; and ) | |
| JOSEPH H. BADAMI, ) | |
| ) | |
| Defendants. ) | |

ORDER

This matter is before the court on cross-motions for partial summary judgment by the defendants Bradley and Nancy Mellott (Fil. No. 22) and the plaintiff (Fil. No. 42). John M. Guthery represents the plaintiff and Andrew Warren Muller represents the Mellotts. Evidence and briefs were filed and, pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7056-1, the motions were taken under advisement without oral arguments.

Both motions are granted in part.

This adversary proceeding was filed to determine the parties' respective rights in the proceeds of a settlement of a lawsuit. Mr. Wilson, the plaintiff, loaned the debtors money in 2005 and holds as collateral a security agreement and assignment from the debtors of certain causes of action against the contractors who built the debtors' house. He perfected his security interest by filing a U.C.C. financing statement with the Nebraska Secretary of State. The Mellotts claim a lien on the debtors' house, secured by a deed of trust, as collateral for a 1997 loan of $137,000.00. The debtors initiated a lawsuit against the contractors and obtained a settlement of $200,000.00. Part of the funds have been used for attorney fees, leaving a balance of $129,662.44. Mr. Wilson now seeks a determination that his is the first and only valid security interest and lien on the remaining settlement proceeds. The parties have filed motions for partial summary judgment to establish their rights to the proceeds.

Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). On a motion for summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Ricci v. DeStefano, ___ U.S. ___, 129 S. Ct. 2658, 2677 (2009) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Id. (quoting Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). See also Celotex Corp., 477 U.S. at 324 (where the nonmoving party "will bear the burden of proof at trial on a dispositive issue," the nonmoving party bears the burden of production under Rule 56 to "designate specific facts showing that there is a genuine issue for trial").

The following facts are undisputed or established by the record:

1. In February 1997, the debtors entered into a written contract with Kramer & Son Construction Co. to purchase a lot and build a home at 4320 Red Deer Road in Lincoln, Nebraska.

2. The debtors closed on the purchase of the home, paying $236,000.00, on May 20, 1997, and took possession.

3. On May 20, 1997, the debtors executed a promissory note to the Mellotts to borrow $137,000.00.

4. The debtors also executed a deed of trust on the property at 4320 Red Deer Road, Lincoln, Nebraska 68516, for the benefit of the Mellotts. It was recorded on May 21, 1997.

5. On February 1, 2005, the debtors executed a promissory note to Mr. Wilson for $22,000.00 plus subsequent advances.

6. As collateral for the Wilson note, the debtors signed a security agreement and assignment on February 1, 2005, granting a security interest in

> [a]ny and all claims, suits or causes of action by Debtors against John P. Kramer, Kramer & Sons Construction Co., Kramer Enterprises Homes, L.L.C., Randy's Custom Cabinets, Inc. or any other responsible party (collectively referred to as the 'Contractors') for the losses incurred by Debtors arising from or relating to failures and deficiencies in the construction of the house located at 4320 Red Deer Drive [sic], Lincoln, NE 68516, (the 'Property') including, but not limited to, the failures and deficiencies that resulted in certain mold damage that was discovered by the Debtors on or about October 7, 2004.

7. Mr. Wilson filed a U.C.C. Financing Statement with the Nebraska Secretary of State on February 4, 2005, to perfect his security interest, listing as collateral "[a]ll of debtors' assets."

8. The debtors filed their Chapter 7 bankruptcy petition on February 1, 2007.

9. The debtors valued their residence at $230,149.00 on Schedule A.

10. Mr. Wilson filed a proof of claim for $184,467.39.

11. The Mellotts filed a proof of claim for $209,075.00.

12. In 2005, the debtors filed a lawsuit against two of the Contractors asserting a claim for damages relating to deficiencies in the construction of the house at 4320 Red Deer Road, Lincoln, Nebraska. Specifically, the debtors alleged negligence and breach of contract against the two defendants, asserting that improper installation of certain components of the house resulted in water and sewage damage to the home and its contents, created contamination from mold and fungal spores, reduced the value of the house, and caused health problems for the debtors and their two minor children.

13. That lawsuit was listed as an asset when the debtors filed their bankruptcy petition, so the Chapter 7 trustee retained counsel to represent the debtors in the litigation.

14. Through mediation, a settlement was reached in the lawsuit in August 2009, resulting in a lump-sum recovery of $200,000.00 for the debtors.

15. The memorandum of understanding among the parties to the mediation did not specify or delineate which claims the settlement proceeds were for.

16. The Mellotts objected to the Chapter 7 trustee's motion to approve the memorandum of understanding because the memorandum failed to "describe the amounts of the settlement that correspond to which claims in the Litigation." (Fil. No. 34 in Case No. BK07-40203.)

17. The trustee and the Mellotts settled that objection, with the trustee agreeing that no distributions would be made "until the parties hereto have been able to negotiate which portion of the settlement proceeds are to compensate which claims." (Fil. No. 39 in Case No. BK07-40203.)

18. An order was entered approving the memorandum of understanding on October 9, 2009. (Fil. No. 40 in Case No. BK07-40203.)

19. Court-approved payments of $70,337.56 for attorneys' fees and expenses have been paid from the settlement amount.

20. The balance of the settlement, $129,662.44, is being held by the Chapter 7 trustee.

21. The debtors claimed the settlement amount as exempt under Neb. Rev. Stat. § 25-1563.02[1], but the trustee objected on the grounds that "the settlement is not for personal injuries or death, in its entirety, but also includes property damage which is outside of the scope of the provisions of § 25-1563.02." Fil. No. 43 at ¶ 6. No resistance was filed, so the objection was granted.

22. This adversary proceeding, to determine the parties' rights to and amount of distribution from the settlement proceeds was filed on April 6, 2010.

The only question before the court at this time is the respective lien priorities of the parties in the settlement proceeds. The apportionment of the proceeds to the respective liens has yet to be determined, but that issue has not been presented to the court.

Mr. Wilson and the Mellotts characterize the central question in their dispute as whether the settlement proceeds are the debtors' personal property or whether the proceeds are substitute collateral for the value of the real property. If the proceeds are personal property, the plaintiff argues, his U.C.C. financing statement gives him priority over the Mellotts' deed of trust. On the other hand, if the proceeds are for damage to the Mellotts' collateral, their lien would have priority.

Article 9 of the U.C.C. does not apply to the assignment of tort claims, although the right to payment upon settlement is no longer a tort claim but a payment intangible. See Neb. U.C.C. § 9-109(d)(12)[2] and Official Comment 15 thereto[3]. A payment intangible is personal property. Neb.

---

[1]25-1563.02. Lump-sum settlement; structured settlement; exempt from certain process; when

(1) Except as provided in subsection (2) of this section, all proceeds and benefits, including interest earned thereon, which are paid either in a lump sum or are accruing under any structured settlement providing periodic payments, which lump-sum settlement or periodic payments are made as compensation for personal injuries or death, shall be exempt from attachment, garnishment, or other legal or equitable process and from all claims of creditors of the beneficiary or the beneficiary's surviving dependents unless a written assignment to the contrary has been obtained by the claimant.

(2) All proceeds and benefits, including interest earned thereon, which are paid for personal injuries may be garnished by a county attorney or authorized attorney pursuant to section 43-512.03 or garnished for child support as defined in section 43-1705 by an obligee as defined in section 43-1713.

[2](d) This article does not apply to:
    . . .
    (12) an assignment of a claim arising in tort, other than a commercial

(continued...)

-4-

U.C.C. § 9-102(a)(42). If the proceeds are personal property, then Mr. Wilson's lien is superior.

By its terms, the Mellotts' trust deed covers:

the real property, located in the County of Lancaster, State of Nebraska, and described as follows (the "Property"):
    Lot 9 Block 2, Cripple Creek South, 4th Addition, Lincoln, Lancaster County, NE.
    Together with all rents, easements, appurtenances, hereditaments, interests in adjoining roads, streets and alleys, improvements and buildings of any kind situation thereon and all personal property that may be or hereafter become an integral part of such buildings and improvements.

Fil. No. 1, Ex. 5.

As noted above, the debtors' state court complaint alleged personal injury and property damage. The parties to the settlement did not allocate the recovery among the types of damages, instead leaving that for later determination.

When a monetary remedy is awarded for damage to real property, it "takes the place of the reduced value of the land." Am. Sav. & Loan Ass'n v. Leeds, 440 P.2d 933, 937 n.2 (Cal. 1968) (en banc). Accordingly, a lender holding an interest in real estate as collateral would be entitled to damages for injury to his security. Therefore, to the extent any portion of the settlement allocable to property damage represents a reduction in the value of the Mellotts' collateral, it is subject to the deed of trust lien, which is superior to Mr. Wilson's security interest. To the extent the settlement proceeds are for personal injury, and to the extent the assignment to Mr. Wilson may be interpreted as applicable to personal injury damages, his security interest attaches to those proceeds ahead of any other competing interests.

---

[2](...continued)
tort claim, but sections 9-315 and 9-322 apply with respect to proceeds and priorities in proceeds[.]

[3]     15. Tort Claims. Subsection (d)(12) narrows somewhat the broad exclusion of transfers of tort claims under former Section 9-104(k). This Article now applies to assignments of "commercial tort claims" (defined in Section 9-102) as well as to security interests in tort claims that constitute proceeds of other collateral (e.g., a right to payment for negligent destruction of the debtor's inventory). Note that once a claim arising in tort has been settled and reduced to a contractual obligation to pay, the right to payment becomes a payment intangible and ceases to be a claim arising in tort.

      IT IS ORDERED: The motion for partial summary judgment by the defendants Bradley and Nancy Mellott (Fil. No. 22) is granted to the extent that they have a superior lien in the settlement proceeds for property damage to compensate them for the reduction in the value of their collateral. The motion for partial summary judgment by the plaintiff (Fil. No. 42) is granted to the extent that he has a superior lien in the settlement proceeds for personal injury. The respective amounts of those lien rights remain to be determined.

      DATED:     December 21, 2010

                                             BY THE COURT:

                                             /s/ Timothy J. Mahoney
                                             United States Bankruptcy Judge

Notice given by the Court to:
      *John M. Guthery
      *Andrew Warren Muller
      U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.